**UNITED STATES of America,**

v.

**Jose A. VALDEZ.**

**Criminal No. 96–184.**

United States District Court,
D. New Jersey.

Aug. 16, 1996.

Richard Coughlin, Assistant Federal Public Defender, Federal Public Defender, District of New Jersey, Camden, New Jersey, for Defendant, Jose A. Valdez.

Faith S. Hochberg, United States Attorney, Kevin T. Smith, Assistant United States Attorney, United States Department of Justice, District of New Jersey, Camden, New Jersey, for the United States.

## OPINION

ORLOFSKY, District Judge:

On May 24, 1996, Defendant, Jose A. Valdez, pled guilty to a one count indictment charging that on December 17, 1994, while lawfully confined as a federal prisoner at the satellite camp housing of Fairton Federal Correctional Institution ("FPC–Fairton"), by virtue of a judgment and commitment of the United States District Court for the Southern District of Florida, he knowingly and wilfully escaped from FPC–Fairton satellite camp housing, in violation of 18 U.S.C. § 751(a). According to the United States Sentencing Guidelines, the Base Offense Level for this offense is 13. *See* U.S.S.G. § 2P1.1(a).

The issues before this Court concern whether Defendant is entitled to a downward offense level adjustment pursuant to either section 2P1.1(b)(3),[1] or section 3E1.1[2] of the Sentencing Guidelines. Offense level adjustment under section 2P1.1(b)(3) requires the Court to determine whether FPC–Fairton, the facility from which the Defendant escaped, is a facility "similar to" a community corrections center. In contrast, offense level adjustment under section 3E1.1 requires the Court to decide whether the Defendant clearly demonstrated acceptance of responsibility for his offense. For the reasons which follow, I find that the Defendant is not entitled to a downward offense level adjustment under either provision of the Sentencing Guidelines.

### A. Downward Departure Pursuant to Section 2P1.1(b)(3)

█ The Defendant contends that the downward offense level adjustment of U.S.S.G. § 2P1.1(b)(3) should apply to reduce his offense level by four levels. In contrast, the United States asserts that the downward offense level adjustment of U.S.S.G. § 2P1.1(b)(3) does not apply. Section 2P1.1(b)(3) instructs that "[i]f the defendant escaped from the non-secure custody of a community corrections center, community treatment center, 'halfway house,' or similar facility ... decrease the offense level under subsection (a)(1) by 4 levels." U.S.S.G. § 2P1.1(b)(3).

Accordingly, whether the Defendant is entitled to such an offense level reduction in this case depends upon whether, prior to his escape, he was in the "non-secure custody of a community corrections center, community treatment center, 'halfway house,' or similar facility." *See* U.S.S.G. § 2P1.1(b)(3).

Whether FPC–Fairton is such a "facility" within the meaning of Section 2P1.1(b)(3) has not yet been addressed in this Circuit. In *United States v. Hillstrom*, 988 F.2d 448 (3d Cir.1993), the Court of Appeals for the Third Circuit held that a district court must conduct an evidentiary hearing to ascertain whether a correctional facility from which a defendant has escaped is "similar to" a community corrections center ("CCC") for purposes of offense level reduction under Section 2P1.1(b)(3). On remand, the District Court in *Hillstrom* noted that the comparison between a community corrections center and the facility from which a defendant escaped is to be made on a case-by-case basis. *United States v. Hillstrom*, 837 F.Supp. 1324, 1329 (M.D.Pa.1993), *aff'd*, 37 F.3d 1490 (3d Cir.1994), *cert. denied*, ⸺ U.S. ⸺, 115 S.Ct. 1382, 131 L.Ed.2d 236 (1995). Among the factors to be considered are:

whether the purpose of placement is primarily punitive or primarily rehabilitative; inmate employment; provision of meals, religious services and facilities, recreation,

---

**1.** Section 2P1.1(b)(3) provides in relevant part that "[i]f the defendant escaped from the non-secure custody of a community corrections center, community treatment center, 'halfway house,' or similar facility ... decrease the offense level under subsection (a)(1) *by 4 levels.*" U.S.S.G. § 2P1.1(b)(3) (emphasis added).

**2.** Section 3E1.1(a) provides in relevant part that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level *by 2 levels.*" U.S.S.G. § 3E1.1(a) (emphasis added).

etc., on-site or off-site; provision of medical and dental services on-site or off-site, and payment for such services; authorization of staff to prevent escape; use of force and/or firearms by staff; whether the Bureau of Prisons operates the facility; ratio of inmates to staff; and reasons for which inmates may leave the grounds.

*Id.* at 1329.

The United States has provided the Court with a chart comparing the conditions of confinement at FPC–Fairton with The Kintock Group Halfway House of Philadelphia, Pennsylvania, the closest facility used by the Bureau of Prisons. (*See* Letter Brief, dated August 13, 1996, from Kevin T. Smith, Esq., to Judge Stephen M. Orlofsky, and Chart attached thereto).[3] Counsel for Defendant has indicated that he will "not contest [the] contents" of the chart provided by the United States. Counsel for Defendant has also advised the Court that he will not seek an evidentiary hearing on this issue. (*See* Letter, dated August 14, 1996, from Richard Coughlin, Esq., to Judge Stephen M. Orlofsky). Accordingly, the contents of the attached chart will be incorporated by the Court as part of the undisputed factual record in this case.

The twenty-five criteria compared in the chart are identical to those utilized by the District Court in *Hillstrom* in determining whether FPC Allenwood was "similar" to Catholic Services Community Corrections Center ("Catholic Services") in Scranton, Pennsylvania, for purposes of the offense level reduction under Section 2P1.1(b)(3).

In support of its finding that FPC–Allenwood was not "similar" to Catholic Services, the District Court in *Hillstrom* noted several distinctions between FPC–Allenwood and a CCC. These same dissimilarities also exist between FPC–Fairton and Kintock Group Halfway House. Most notably, the Court in *Hillstrom* pointed out "a divergence in the safety ramifications of an escape from the two types of facilities." *Id.* at 1342. The Court noted that while the staff at FPC–Allenwood is trained in the use of firearms to prevent an escape, the staff at a CCC is not.

The Court also noted that while the staff at FPC–Allenwood may apprehend an escapee outside the grounds of the facility, the staff at a CCC cannot. *Id.*

Likewise, the undisputed evidence presented to the Court in this case reveals that the staff at FPC–Fairton may use force to prevent an escape, while the staff at Kintock Group Halfway House cannot. In addition, the undisputed facts in this case reveal that the staff of FPC–Fairton may recapture an escapee outside the facility, while the staff of Kintock Group Halfway House may not do so.

The *Hillstrom* Court further noted that many of the characteristics of a traditional prison facility—the provision of medical and dental services, on-site laundry, on-site recreation, and on-site employment—do not exist at Catholic Services, yet are present in FPC–Allenwood. *Id.* at 1342. The Court in that case also pointed out that while inmates at Catholic Services must pay for medical and dental services, the inmates at FPC–Allenwood do not. *Id.*

Similarly, the undisputed evidence in this case reveals that while such services are provided by FPC–Fairton, they are not provided by Kintock Group Halfway House. Further, the record reveals that while the inmates at the Kintock Group Halfway House must pay for medical and dental services, the inmates at FPC–Fairton do not.

In addition, the District Court in *Hillstrom* noted the difference in the maximum sentence to be served by an inmate in each of the facilities—ten years at FPC–Allenwood, and one year at the Catholic Services. The Court found this difference to be important because "an escape from FPC–Allenwood is an escape from a longer period of incarceration." *Id.* at 1342. Likewise, the undisputed evidence in the record reveals that the maximum sentence for an inmate at FPC–Fairton is ten years, while the maximum sentence for an inmate at Kintock Group Halfway House is eighteen months.

Based upon the foregoing, it is apparent that each of the dissimilarities between FPC–Allenwood and Catholic Services Half-

---

**3.** The Chart is attached as an Appendix to this Opinion.

way House found to be dispositive by the District Court in *Hillstrom,* relating to criteria such as security policies, provision and payment of services, length of maximum sentence, and staff's ability to use force, also exist between FPC–Fairton and Kintock Group Halfway House in this case. For these reasons, I find that FPC–Fairton is not "similar to" a community corrections center, and therefore, the 4–point reduction in offense level provided in Section 2P1.1(b)(3) of the Sentencing Guidelines does not apply in this case.

**B. Downward Departure Pursuant to Section 3E1.1(a)**

██ As part of the plea agreement in this case, the United States and the Defendant have agreed to stipulate that, by pleading guilty to the offense of escape with which he was charged, the Defendant clearly demonstrated acceptance of responsibility for his offense and is therefore entitled to a 2–point offense level reduction pursuant to section 3E1.1(a) of the Sentencing Guidelines. Such an agreement to stipulate, however, cannot and does not bind the sentencing court, which may reject any or all of the stipulations entered into by the parties.[4]

Section 3E1.1(a) of the Sentencing Guidelines instructs that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." Comment 3 to Section 3E1.1(a) provides in relevant part that the:

> [e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable ... will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not

entitled to an adjustment under this section as a matter of right.

In *United States v. Ofchinick,* 877 F.2d 251 (3d Cir.1989), the Court of Appeals for the Third Circuit examined the application of the offense level reduction provision of Section 3E1.1(a) to a defendant who had pled guilty to the offense of escape. In that case, the Court stated that a guilty plea, alone, does not entitle a defendant to a reduction in offense level under section 3E1.1 as a matter of right. *Id.* at 255.

The *Ofchinick* Court noted the importance of a defendant's voluntary surrender in determining whether that defendant accepted personal responsibility for his criminal conduct where the defendant's underlying offense was that of escape from prison. *Id.* at 255. The Court reasoned that "in an escape case a defendant by surrendering, though not wiping out the offense, will to some degree reverse its consequences." *Id.* The Court further stated that "while we do not suggest that in any criminal case a determination of whether there was a voluntary surrender is not significant in deciding whether a defendant accepts personal responsibility for his criminal conduct, a voluntary surrender by a defendant is particularly important in an escape case for these purposes." *Id.*

The Court also found that despite the defendant's plea of guilty, the defendant's negotiations with the government regarding the conditions of his surrender and his ultimate failure to surrender after his escape were "inconsistent with the acceptance of responsibility for his criminal conduct," and therefore, the defendant was not entitled to an offense level reduction under section 3E1.1 of the Sentencing Guidelines. *Id.*

In support of his contention that the Defendant is entitled to an offense level reduction under section 3E1.1, counsel for Defendant asserts that "[n]either the United States Court of Appeals nor any other Court has concluded that a defendant in an escape case should not receive an adjustment for acceptance of responsibility because they remained

---

4. Indeed, this is clearly recognized in the language of the plea agreement in this case signed by the Government, Defendant and Defense counsel which provides that: "[t]his agreement to stipulate, however, cannot and does not bind the sentencing court, which may make independent factual findings and may reject any or all of the stipulations entered into by the parties."

at large and never surrendered." (*See* Letter, dated July 19, 1996, from Richard Coughlin, Esq., to Matthew F. Miller, United States Probation Officer).

■ Likewise, this Court does not find that a defendant in an escape case who never voluntarily surrendered is *per se* barred from receiving a downward adjustment in offense level under Section 3E1.1. Instead, like the Court in *Ofchinick,* I conclude that a defendant's failure to surrender is strong evidence of an absence of acceptance of responsibility, which must be balanced with all of the other circumstances surrounding a defendant's particular case.

■ I find that under the particular circumstances of the Defendant's case, the Defendant has failed to clearly accept responsibility for his offense. While Defendant's guilty plea may be some evidence of his acceptance of responsibility, it, alone, will not automatically trigger a reduction in the offense level under section 3E1.1(a). *See Ofchinick,* 877 F.2d at 255. I find that, although the Defendant in this case did not try to negotiate with the government regarding the terms of a possible surrender, as did the defendant in *Ofchinick,* the Defendant's flight to the Dominican Republic after his escape, where he remained at-large for over sixteen months, combined with his failure to surrender voluntarily after his escape, reflect conduct which is wholly inconsistent with the acceptance of responsibility. Accordingly, I find that the 2–point reduction in offense level provided in Section 3E1.1(a) of the Sentencing Guidelines does not apply.

COMPARISON OF CONDITIONS OF CONFINEMENT AT FPC–FAIRTON, FAIRTON, NJ
AND
THE KINTOCK GROUP HALFWAY HOUSE, PHILADELPHIA, PA

| | Item | FPC—Fairton | Kintock Group HH |
|---|---|---|---|
| 1. | Employment of Inmates | On-site | Off-site |
| 2. | Psychiatric Counseling | On-site | Drug Counseling On-site All Other Counseling Off-site |
| 3. | Religious Services | On-site | Off-site |
| 4. | Preparation of Meals | On-site | On/Off-site |
| 5. | Consumption of Meals | On-site | Pre-release: Off-site Court: On-site (if on Work Release, Off-site) |
| 6. | Expenses of Meals Borne by | United States | Inmate/Private Contractor |
| 7. | Medical and Dental Expenses Borne by | Bureau of Prisons | Inmate |
| 8. | Medical and Dental Services Performed | On-site | Off-site |
| 9. | Operator of Facility | Bureau of Prisons | Private Contractor |
| 10. | Mandatory Training of Staff | Yes | Yes |
| 11. | Ratio of Inmates to Staff | 8 to 1 | 5 to 1 |
| 12. | Eligibility for Home Confinement | Yes, but determined by the U.S. Probation Office during last 6 months of confinement | Yes, by Court Order |
| 13. | Monitoring of All Non–Legal Telephone Calls | Yes | No |
| 14. | Maximum Sentence of Inmate | 10 years | 18 months |
| 15. | Observation of Each Inmate | 7 Counts/Day | 9 Counts/Day |
| 16. | Force Used to Prevent Escape | Yes | No |
| 17. | Deadly Force Used to Prevent Escape | No | No |
| 18. | Confinement of Inmate to the Facility | Yes—12 hour furlough maximum with the warden's approval | Pre-release: Yes—weekends & 6–9 pm Court: Yes—work & 4 hrs/week personal |
| 19. | Leaving Facility for Funeral of Family Member or Family Emergency | Yes, but escorted by Bureau of Prisons personnel, but no furlough | Yes, with proof |
| 20. | Leaving Facility for: —Employment —Meals —Religious Services | No No No | Yes Yes Yes |
| 21. | Staff Recapture of an Escapee outside Facility | Yes (18 U.S.C. § 3050) | No |
| 22. | For Serious Disciplinary Infraction, Transfer to . . . | Depending of Findings: return to low or medium security institution, or remain at FPC with disciplinary restrictions | Return to Bureau of Prisons or the Court |
| 23. | Recreation | On-site | On/Off-site |
| 24. | Armory at Facility | Yes | No |
| 25. | Staff Trained in Use of Firearms, Authorized to Use | Yes | No |